HAWAII STATE FIFTH CIRCUIT COURT
--------------------------------------------------------X
Oleksiy Anatolievitch Reva
    Plaintiff

Vs.

NCL Pride of America LLC
    Defendant
--------------------------------------------------------X
STATE OF HAWAII)
KAUAI COUNTY)

PETITION FOR DECLARATORY JUDGEMENT
AND COMPLAINT FOR
COMPENSATION OF MONETARY DAMAGES

Civil Action

No. 18-1-0079



2018 JUN 15 AM 8: 24
STATE OF HAWAII FILED
DANETTE FUJII CLERK

TABLE OF LEGAL AUTHORITIES

CASES

1. Ex Parte Kumezo Kawato, 317 U.S. 69;63 S. Ct. 115;87 L. Ed. 58; 1942 U.S. LEXIS 1200.
2. Shoppe v. Gucci Am., 94 Hawai'i 368, 377, 14 P.2d 1049, 1058 (2000).
3. State v O'Daniel, 62 Hawai'i 518, 616 P2d 1383 (1980).
4. Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994).

STATUTORY AND REGULATORY REFERENCES

1. 42 U.S.C. Sec. 12101 Americans with Disabilities Act of 1990 ("ADA").
2. 42 U.S.C. Sec.Sec. 12102(2)(A)-(C) (2006) of Americans with Disabilities Act (1990).
3. Sec. Sec. 378-2(a)(1) and 378-2 (2) of Hawaii Revised Statutes ("HRS").
4. The ADA Amendments Act of 2008, Pub. L. No. 110-325, Sec.3, 122 Stat. 3553,3556
5. 29 U.S.C. # 705(20)(B) (Supp. 2007).
6. Sec. 704-400 of Hawaii Revised Statutes ("HRS"). Crimes and Criminal Proceedings.
7. Sec. 378-62 of "HRS" Hawaii Whistleblowers Protection Act ("HWPA").
8. Immigration Reform and Control Act of 1986 ("IRCA").
9. Sec. 208.13 and 208.18 of Immigration and Naturalization Act ("INA").
10. Sec. 368-12 of Hawaii Revised Statutes ("HRS").
11. Sec. 12-46-20 of Hawaii Administrative Rules ("HAR").
12. 28 U.S.C. Sec. 1331, 1343,1346, 1350, 1357.
13. Sec. 2000e-2(m) of The Civil Rights Act of 1991
14. Sec. 2000e-3(a) of The Civil Rights Act of 1991

*no summons received*

EXHIBIT A

PETITION

The Plaintiff, Oleksiy Anatolievitch Reva, *pro se*, for his Petition states as follows:

II. PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, Oleksiy Anatolievitch Reva, is currently residing at 775 Westminster Rd, Brooklyn, NY 11230. He is currently the resident of New York State.

2. The Plaintiff is the citizen of Ukraine who was granted political asylum pursuant to *8 C.F.R. Sec. 208.13 and 208.18*. The Plaintiff has the Right for Bringing Suit to the Courts according to *Ex Parte Kumezo Kawato, 317 U.S. 69; 63 S. Ct. 115; 87 L. Ed. 58; 1942 U.S. LEXIS 1200 and also 28 U.S.C. Sec. 1331, 1343,1346, 1350, 1357*.

3. Defendant is the cruise company NCL America, Inc. registered in the USA at 7665 Corporate Center Drive, Miami, FL 33126. The company, is operating cruise ship "Pride of America" that is coming to ports of Honolulu, Kahului, Hilo and Lihue of the State of Hawaii on the weekly basis since year 2004. The cruise ship is receiving mail at 335 Merchant Street #3169, Honolulu, HI 96802.

4. The Plaintiff worked for the NCL America, Inc. in Hawaii as a Bar Waiter during two consecutive contracts: from 4/23/2017 till 10/1/2017 and from 11/27/2017 till 1/18/2018. On the latter date he was terminated at the disciplinary session held during the ship's stay at the port of Lihue. At all times his employment was regulated by the collective Agreement between NCL America, Inc. and Seafarers Entertainment and Allied Trades Union.

5. The Case is brought to the Court pursuant to *Sec. 368-12 of Hawaii Revised Statutes ("HRS")* and *Sec. 12-46-20 of Hawaii Administrative Rules ("HAR")*.

III. PREVIOUS LAWSUITS BY THE PLAINTIFF

Previously The Plaintiff filed no lawsuits against Defendant.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Plaintiff filed a complaint to Hawaii Civil Rights Commission regarding violation on Count 1 as of 11/29/2017 and amended a.m. complaint with information regarding violation on Count 2 as of 03/12/2018. On 05/25/2018 the Plaintiff received by Certified Mail the Notice of Dismissal and Right to Sue Letter dated 05/18/2018 stating the inability of the Commission to proceed further with the case (See Exhibit 31). In such, all administrative remedies for the case are exhausted.

V. STATEMENT OF CLAIM

At all relevant times herein, Defendant was "The Employer" for the purposes of Hawai'i Labor Law and the Plaintiff was "The Employee".

## COUNT ONE: DEFENDANT KNOWINGLY VIOLATED THE PLAINTIFF'S RIGHT FOR REASONABLE ACCOMMODATION

I. OBJECTIVE COMPONENT: THE PLAINTIFF HAS THE LEGAL RIGHT FOR REASONABLE ACCOMMODATION.

1. Pursuant to *Chapter 3 Part 2 of the Americans with Disabilities Act of 1990 ("ADA")*, disabled Employee has the right for a reasonable accommodation. *"...A reasonable accommodation is a modification or adjustment to a job, the work environment, or the way things usually are done that enables a qualified individual with a disability to enjoy an equal employment opportunity..."(sic)*.

2. *Americans with Disabilities Act, 42 U.S.C. Sec. Sec. 12102(2)(A)-(C) (2006); Rehabilitation Act of 1973; 29 U.S.C. # 705(20)(B) (Supp. 2007)* all define "disability" as "a physical or mental impairment that substantially limits one or more of [a person's] ... major life activities ... ; a record of such impairment; or being regarded as having such an impairment"). *The ADA Amendments Act of 2008, Pub. L. No. 110-325, Sec.3, 122 Stat. 3553, 3556* says that an impairment can count as a disability even if it (1) only substantially limits you in *one* major life activity; or (2) is episodic or in remission, *if* it would substantially limit you in at least *one* major life activity when it were active. Finally, under *The ADA Amendments Act of 2008, Ibid.* major life activities "include, but are not limited to ... sleeping, ... concentrating, thinking, communicating, and working".

3. Taking into account everything above, The Employee has the legal right for a reasonable accommodation even if he has a record of some impairment (for example, the impairment substantially limiting concentration and thinking) and this impairment is episodic or in the remission.

II. SUBJECTIVE COMPONENT: THE PLAINTIFF'S RIGHT FOR THE REASONABLE ACCOMMODATION WAS VIOLATED BY THE DEFENDANT.

1. The Plaintiff has the record of Post-Traumatic Stress Disorder (PTSD) that he developed during hostilities in Ukraine in 2013-2014. In April, 2014 he was examined by the psychiatrist Dr. Grinspun and diagnosed by him with PTSD (see Exhibit 1). In August, 2014 the Plaintiff received political asylum in the USA and in September, 2014 was considered fully disabled/unable to work for the period of 18 months. Exhibit  provided below is the Biopsychosocial Summary of the Plaintiff from the Human Resource Administration of the State of New York (FedCap) of 2/2/2018 -2/21/2018 that contains Medical History of the Claimant from 09/02/2014 (page 2 of the Exhibit 3). It is noticing the full disability/inability of the patient to work as of 2014. Page 5 of the Exhibit 3 provides the detailed description of the Medical History symptoms: PTSD, depression, **difficulty with memory.**

2. The Plaintiff's family remained in danger in Eastern Ukraine, for example on 03/23/2017 ammunition depot containing 100,000 tons of ordnance exploded only 16 miles away. On 06/27/2017 the hostilities sparkled again starting with presumably Russian cyber-attack on communication network of Ukraine. Thus for the whole 1st week of July, 2017 the Plaintiff was unable to contact his parents from the ship he worked at, experiencing "extreme mental or emotional disturbance for which there was the reasonable explanation" (*State v O'Daniel, 62 Hawai'i 518, 616 P2d 1383 (1980)*). Exhibit 4 contains only partial list of phone calls made from the Plaintiff's cellphone on 07/06/2017 to his mother's phone (Irina Reva); their total number for that evening exceeding 35 (thirty five). There are the grounds to say that on the evening of 07/06/2017 there happened the remission of the Plaintiff's PTSD, since making so many calls at once is abnormal.

3. In the morning of 07/07/2017 the Plaintiff missed the obligatory safety training for the ship's crewmembers. The same day he was hospitalized/restricted to his cabin by the ship's physician (see Exhibit 23) because he was found unfit for duty. Never the less, on 07/09/2017 the Plaintiff received Notification of Warning Session and Crewmember Statement Form (Exhibits 24 and 25) which he filled and presented to the HR Department and the Staff Captain one day before the Warning Session (called "the Captain's Court"). The arguments of the Plaintiff contained the detailed description of his temporal insanity, in particular, **difficulty with concentration and memory.**

4. Despite of the written and oral arguments of the Plaintiff stating his "temporal insanity" pursuant to *State v O'Daniel, 62 Hawai'i 518, 616 P2d 1383 (1980)* and "diminished capacity" according to *Sec. 704-400 of Hawaii Revised Statutes ("HRS")* at the Warning Session the Staff Captain of "Pride of America" Steven Tepper served on the Plaintiff the first Warning leading to the limitations of his career development (see Exhibit 26). In the presence of the undersigned four officers he stated in the violation of the Law of Hawaii: "No temporal disability is the reason for missing the safety training", though *Sec. 704-400 of HRS* is stating "…A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law…"

5. In such, the Employer willingly and knowingly denied to the Employee the reasonable accommodation in the form of being medically excused from the safety meeting. In addition, the Employer subjected the Employee to the discriminatory disciplinary action based on his disability.

### COUNT TWO: THE DEFENDANT ILLEGALLY TERMINATED THE PLAINTIFF FOR WISTLEBLOWING

I. OBJECTIVE COMPONENT: THE PLAINTIFF WAS ENGAGED IN ACTIVITY PROTECTED BY THE LAW AND THERE EXISTS THE LEGAL FRAMEWORK TO PROVE RETALIATION

1. *Title VII of 42 U.S.C. § 2000e-3(a)* makes it unlawful for an employer to retaliate against an employee on the basis of the employee's opposition to practices or actions prohibited by *Title VII*. Similarly, *Sec. 378-2(2) of "HRS"* makes it unlawful for an employer to "discharge, expel, or otherwise discriminate against any individual because the individual … has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited by this part." See *Sec. Sec. 378-2(a)(1) and 378-2 (2) of "HRS"*. Finally, *378-62 of "HRS"* Hawaii Whistleblowers Protection Act ("HWPA") is also stating:"…An employer shall not discharge… The employee who reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of the Law".

2. As of 07/26/2017 the Plaintiff filed the Pre-Complaint Questionnaire to the Hawaii Civil Rights' Commission that resulted in Charge of Discrimination FEPA # 19959; EEOC No. 37B-2017-00356 dated 11/29/2017 against "NCL America, Inc."(see Exhibit 27). Therefore, since 07/26/2017 the Plaintiff was protected by the above mentioned whistleblowers' protection laws.

3. "…Retaliation would be shown by evidence that the Plaintiff engaged in protected activity, that he was thereafter subjected to an adverse employment action, and that there is a causal link between the protected activity and the adverse employment activity…" See *Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994)*

## II. SUBJECTIVE COMPONENT: THERE IS A CAUSAL LINK BETWEEN THE PROTECTED ACTIVITY AND THE ADVERSE EMPLOYMENT ACTIVITY AND FURTHER EMPLOYER'S ACTIONS WERE DEFINITELY ADVERSE

1. After the initial evidence for Discrimination Case (HCRC and EEOC #37B-2017-00356) was filed by The Plaintiff to the Hawaii Civil Rights' Commission (see Exhibit 27) The Plaintiff left for the planned vacation starting 10/01/18. He was issued the positive evaluation by the Beverage Manager Jamie Provance recommending his continued employment at the current level (see Exhibit 28).

2. While The Plaintiff was on vacation it was noticed by the Investigator Wayne Akana that a legal letter related to the a.m. case sent to his ship address by him was returned back to him opened despite bearing the "CONFIDENTIAL" logo. The Plaintiff was informed about this fact by the email (Exhibit 29). It was the first possible episode when the "NCL America, Inc." could have learned of his protected activity.

3. On 11/26/18 The Plaintiff came on board of "Pride of America" to start his second Contract as a Bar Waiter with the company. The same day The Plaintiff received finalized Charge of Discrimination (HCRC and EEOC #37B-2017-00356) that he signed and sent back. It was registered at the Hawaii Civil Rights' Commission as of 11/29/17 (see Exhibit 30) and the registered copy was received by the Plaintiff on 12/09/17 at the only port where the ship is picking up mail on Saturdays (Honolulu). It is highly possible that the ship's Management received their copy on the same day, learning of the Plaintiff's protected activity.

4. Right after the Christmas rush in the understaffed Beverage Department was over, on 12/29/17 The Plaintiff was approached by his {then} immediate supervisor Bartender Nicholas Bells who told The Plaintiff in the sarcastic form that he would be out of the ship pretty soon and should start packing. For The Plaintiff's question "Why?" he responded that he did not belong there.

5. Right after the New Year's rush in the understaffed Beverage Department was over in the morning of 01/05/18 The Plaintiff was awakened in his cabin 1707 by the sudden entrance of two ship officers The Plaintiff did not know before. They told The Plaintiff to stay where The Plaintiff was and did the total search of our cabin, confiscating a food item supposedly belonging to The Plaintiff (at that time The Plaintiff was alone in the cabin accommodating three people). The food item was the non-perishable salami, which is allowed by Crew Inspection Guidelines (see Exhibit 11). Normally cabin inspections are conducted each Sunday between 9:30 am and 11:00 am, but not this day. It was the unusual inspection conducted by unknown officers with apparent bias.

6. As of 01/06/18 The Plaintiff was approached by Jamie Provance, Beverage Manager of the ship, who told him that he would face Captain's Court and would be issued the full Warning for his violation. For his question on why the full Warning, not a Record of Discussion (RoD), she responded that after the first Warning the RoDs are not issued. It contradicted ship regulations available to The Plaintiff (Exhibit 2).

7. Next day, 01/07/18, The Plaintiff was summoned by Jamie Provance to her office and was to sign the Notification of Disciplinary Hearing (Captain's Court) to be held at the Staff Captain's Cabin on 01/08/18 at 10:30 am (Exhibit 5). No usual set of forms was given to The Plaintiff (3 forms acknowledging the choice to bring witness/attorney and asking for his statement/side of the story, as in Exhibits 25 and 31). Also The Plaintiff did not get the text of regulation The Plaintiff violated (supposedly, DEH/P016/F2 of the Code of Conduct, though DEH/P016 does not contain provision F2, see Exhibit 12).

8. Between 4:30 pm and 5:00 pm of the same day The Plaintiff visited the office of HR Manager Maris Pangilinan to ask for the a.m. set of forms necessary for the Staff Captain's Court. Each of those forms

(Exhibit 25) is bearing the notice "to be returned by 5:00 pm". Maris was not available at her office and The Plaintiff had to go to his work shift at 5:30 after having dinner (see Exhibit 13 for his bi-weekly schedule). Therefore, The Plaintiff left the handwritten statement acknowledging his inability to duly prepare for the Captain's Court to Personnel Manager Connie Permar at 5:00 pm (Exhibit 6).

9. Next day The Plaintiff was requested by the Beverage Manager Jamie Provance over the phone to come to the Court immediately, for which The Plaintiff refused to obey, since The Plaintiff was not prepared and could not be prepared to it in due circumstances.

10. As of 01/09/18 The Plaintiff was summoned to the office of F&B Manager Dustin Brown, who issued The Plaintiff yet another Notification of Disciplinary Hearing, this time for not coming to the Court on the previous day despite his earlier written explanation (Exhibit 7). As before, on 01/07 and 01/08, The Plaintiff was not issued any forms necessary for the due process aboard the ship. My visit to the office of HR Manager Maris Pangilinen brought about nothing, since from 4:30 pm till 5:00 pm she was receiving a long line of visitors and The Plaintiff had to go to dinner and work again at 5:30 pm (see Exhibit 8 for witness statement). At this point The Plaintiff understood the lack of desire of the company to act in a good faith and follow the due process, so The Plaintiff stopped coming there. The Plaintiff also understood that two accusations, of 01/07 and 01/09 were already well enough for the Management to terminate his employment.

11. Next day at 5:01 pm The Plaintiff made a phone call to the police of Kauai island from the crew mess of the ship (the main public place for the crew with sufficient phone connectivity) and asked officer Alohi to send the police patrol to the ship at the time of Captain's Court (10:30 am of 01/10). The Plaintiff anticipated the conspiracy by the group of officers, namely the Staff Captain Rob Gessner and HR Manager Maris Pangilinen to deprive The Plaintiff his basic right for work, as well as The Plaintiff became sure of deliberate obstruction to justice onboard of the ship in the form of opening confidential mail related to initial Discrimination Case (HCRC and EEOC #37B-2017-00356). The Plaintiff hoped to serve the Charge of Discrimination to the Staff Captain in the presence of the police officer and other officers of the ship, so that he would not be able to ignore the retaliatory nature of the later charges in public.

12. Two hours later The Plaintiff was summoned by the Beverage Manager Jamie Provance, who informed The Plaintiff about postponement of the Captain's Court to 10:30 am of Monday, 01/15/18 (Exhibit 9). However, on 01/14/18 The Plaintiff was summoned by her again be verbally informed about yet another postponement of the case. The Plaintiff attribute this confusion on behalf of the NCL Management to the phone call The Plaintiff made to the police on the previous day and the Management's re-evaluation of the situation.

13. On 01/15/18 the Management issued 3 (three) absolutely random Notifications of Disciplinary Hearings (Exhibits 14, 15, 16) all to be held at the Captain's Court at 10:30 am of 01/18/18. In Notifications on Exhibits 14 and 15 described is the violation of the same paragraph of the Code of Conduct, but different accusation ("refusal to meet with the Staff Captain" and "failure to render the appropriate degree of service"). Similarly, in Notifications on Exhibits 15 and 16 the same accusation is noticed, but the different paragraph of the Code of Conduct is supposedly violated ("Paragraph 2D" and "Paragraph 1.w."). It seems that "Failure to render the appropriate degree of service" accusation was the ad-hoc attempt to issue The Plaintiff the third undisputed Warning (not contested by any US Government agency or US Court) and make legitimate his termination. The Plaintiff never saw any customer complaint with his own eyes as well as The Plaintiff never served the guest who complained about his service. Also, his latest work evaluation by the NCL was showing overall "3" and "3" on "guest/internal customer service" that means "satisfactory for employment at current level" for 5 straight months (Exhibit 28).

14. At this point The Plaintiff decided to finally serve the copy of the Charge of Discrimination (HCRC and EEOC #37B-2017-00356) to the Staff Captain personally, so that he would not be able to later claim unfamiliarity with the charges. Also The Plaintiff hoped that the Captain of the ship himself would see the totality of circumstances and understand the retaliatory nature of the later charges. In the afternoon of Tuesday, 01/16/18 The Plaintiff called the police of Hawaii at the city of Hilo and asked to serve the copy of Charge of Discrimination on the Staff Captain. It was served by the Hawaii County Police officer Murray Toledo (#127) and recorded with #M18003167.

15. On 01/18/18 The Plaintiff appeared at the Captain's Court of "Pride of America" at 10:30 am. There were five officers lead by the Captain himself on the Management side, however, the Captain said he had delegated in full the disciplinary role to the Staff Captain. At the hearing the fact of one disciplinary Warning being legally disputed was ignored. The fact of inability of the Defense to provide any of its' arguments due to the lack of necessary forms was ignored. The only option was to sign the termination decision that was already available to the Staff Captain that means it was prepared preliminary. Afterwards The Plaintiff was escorted to the gangway of the ship and issued the Certificate of Discharge (Exhibit 10).

16. In such, on 01/18/18 The Plaintiff received 3 (three) Warnings at once and was terminated, though in the previous 9 (nine) months of his employment with "NCL America, Inc." (before he filed the discrimination complaint) he received just one.

## VI. PRAYER FOR RELIEF

The Plaintiff is hereby praying for the following relief:

1. Injunctive relief in the form of declaratory judgement obliging "NCL America, Inc." recognize the "temporal insanity" and "diminished capacity" the sufficient reasons for missing safety training and work activities.

2. Restoration of the employment with "NCL America, Inc." with the disciplinary record cleared from all discriminatory and retaliatory warnings.

3. Including all the time spent out of employment (since 01/18/2018) into the general term of employment with "NCL America, Inc." for seniority purposes.

4. Repayment of all salary/wages and tips for every day spent out of employment with "NCL America, Inc." (since 01/18/2018) according to the gross income of the last bi-weekly period of employment/last paycheck (pursuant to Exhibit 18 the daily income from work of the Plaintiff comprised $144.44). Excluded be the vacation time counted as one week of vacation for each thirty days at sea. Excluded be the current daily income from work of the Plaintiff.

5. Repayment of the cost of the room and board for every day spent out of employment with "NCL America, Inc. " (since 01/18/2018) pursuant to the Section 22 "Room and Meal Allowance" (Exhibit 19) of the "Agreement between NCL America, Inc. and SEAT Union" according to the living expense of the Plaintiff in NYC (pursuant to Exhibit 20 daily room expense of the Plaintiff in Brooklyn, NY is $23.33 and daily food expense is estimated reasonably at $6.66). Excluded be the vacation time counted as one week of vacation for each thirty days at sea.

6. Reimbursement of medical expenses for the procedures normally performed by the ship's doctor if not covered by the Plaintiff's current insurance.

7. Reimbursement by the "NCL America, Inc." of all legal expenses for the restoration of justice (printing, mailing, filing fees and travel expenses).

8. Reimbursement by the "NCL" of the Plaintiff's travel expenses including:

- Airline tickets, luggage and flight insurance from Hawaii to NYC (see Exhibits 21, 22) - **$ 397.15 (total)**
- Hotels/hostels on the way to Brooklyn, NY from Hawaii before the Plaintiff rented an affordable room of reasonable quality and hotel booking insurance (see Exhibit 22) - **$ 644.68 (total)**

9. Reimbursement of inflation expense for the whole sum of the monetary reimbursement for each month the litigation on this claim is taking place, starting 02/2018 at the rate determined by the US Labor Department's Bureau of Labor Statistics.

The Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Oleksiy Anatolievitch Reva, *pro se*
06/06/2018